O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

Before this Court is the Motion to Dismiss of Defendants Aeuhi Gomer ("Gomer"), Yong Sam Chang a/k/a Michael Chang ("Sam Chang"), and Sung Hui Kim ("Kim").[1] Defendants Donna White ("White") and Albert Siedman ("Siedman") have joined in the Motion. Dkt. 23, 25. For the following reasons, the Court DENIES the Motion.[2]

## I.   BACKGROUND

Plaintiff is the Estate of David R. Foster ("Estate"), by its executor Sarah Foster. David R. Foster ("Foster") died on June 4, 2010, and at the time of his death, his estate "was worth as much as $20 million." Compl. ¶ 1. The estate is being probated in Riverside Superior Court. Id.

Foster was married three times. Compl. ¶ 4. His first marriage ended in divorce and did not result in any issue. Id. His second marriage was to Patricia Anne Foster in 1955, with whom he had two daughters: Sarah Foster (the executor of the Estate) and Victoria Foster. Id. Patricia Foster died in June 1994. Id. Foster's third marriage was in 1996 to Alexandra Chang, the sister of Defendants Gomer, Sam Chang, and Kim.

---

[1] Dkt. 23.

[2] Defendants White and Siedman have each filed separate Motions to Dismiss for Lack of Personal Jurisdiction. Dkt. 14, 22. Defendant White has joined Siedman's Motion. Dkt. 27. The Court has addressed these two Motions in a separate order.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

Compl. ¶¶ 5-6, 9-10.  Foster was 76 years old at the time of his third marriage.  Compl. ¶ 5.  This marriage produced no issue.  *Id*.  Alexandra Chang predeceased Foster.  Compl. ¶ 5.  Foster was then 88 years old and suffering from dementia and other ailments.  Id.

     Foster's estate consisted primarily of the Foster Family Trust, which was formed by Foster and his second wife Patricia Foster, and which was divided into three sub-trusts upon Patricia Foster's death: the Survivor's Trust, the Marital Trust, and the Credit Trust.  Compl. ¶¶ 14-15.  During his life, Foster was entitled to the income from each of these three trusts, as well as the principal from the Survivor's Trust.  Compl. ¶ 16.  He also had the power to alter, amend, or revoke the Survivor's Trust.  *Id*.  Foster's premarital agreement with Alexandra Chang, his third wife, created the David and Alexandra Foster Trust ("DAFT"), and required that it be funded with Foster's Rancho Mirage Residence, $100,000, and 25,000 shares of Colgate-Palmolive stock (Foster previously served as the CEO of Colgate-Palmolive and the chairman of the Board of Directors of the company).  Compl. ¶¶ 3, 19.  The Premarital Agreement stated that in the event of the death of Foster or Alexandra Chang, the surviving spouse would be entitled to the contents of the DAFT.  Compl. ¶ 19.  Foster served as trustee and Alexandra Chang as successor trustee.  *Id*.  Alexandra Chang predeceased Foster. Compl. ¶5.  Upon her death, "Gomer became the self-appointed and sole caregiver to Foster."  Compl. ¶6.

     The 96-page Complaint largely consists of detailed allegations that Alexandra Chang (by then deceased), together with her siblings Gomer, Sam Chang, and Kim, Alexandra's attorney Donna White, and Albert Siedman, Foster's temporary caretaker for a period of six months in Nantucket, conspired to defraud Foster of his money and property while his health and mental facilities were deteriorating.  This alleged scheme included modifying the David and Alexandra Foster Trust to advantage Alexandra Chang and her siblings (Compl. ¶¶ 31, 41), and lying to Foster about the loyalty of his daughters, his health, and his financial status in order to manipulate his financial behavior.  *See, e.g.,* Compl. ¶¶ 77-87. Some of these allegations are discussed in further detail in the corresponding sections below.  They include that in May 2008 "Gomer and White [the attorney] caused Foster to execute a will, trust and various trust amendments that effectively installed Gomer as Foster's fiduciary and named Gomer as sole beneficiary of almost the entirety of Foster's estate."  Compl. ¶ 82.  Ultimately, however, after court proceedings in Rhode Island, the Nantucket Probate Court struck provisions

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

from this will and trust. The next month, attorney White "renounced the $200,000 in bequests to her daughters" that those 2008 instruments had provided. Complaint, ¶ 154.

Plaintiff brings eleven causes of action against Defendants: (1) violation of the Racketeer Influenced and Corrupt Organization ("RICO"), 18 U.S.C. § 1962(c) against Gomer; (2) violation of RICO against White; (3) RICO conspiracy, 18 U.S.C. § 1962(d) against White; (4) RICO conspiracy against Siedman; (5) RICO conspiracy against Sam Chang and Kim; (6) elder abuse against all Defendants; (7) breach of fiduciary duty against Gomer, White, and Siedman; (8) constructive fraud against Gomer, White, and Siedman; (9) fraud against all Defendants; (10) conversion against Gomer and Sam Chang; and (11) unjust enrichment against all Defendants. Plaintiff filed this Complaint in federal court on the basis of federal question and diversity jurisdiction. Plaintiff seeks actual damages, prejudgment interest, treble damages under 18 U.S.C. § 1964(c), costs, and attorneys' fees. Prayer for Relief.

Defendants bring this Motion to dismiss Plaintiff's first and fifth causes of action, for RICO violations and for RICO conspiracy respectively. The first cause of action is asserted against Gomer, while the fifth cause of action is against Sam Chang and Kim.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

The plausibility standard articulated in *Twombly* and *Iqbal*, requires that a complaint plead facts demonstrating "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 129 S.Ct. at 1950 (internal citation, alteration, and quotation marks omitted); *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the pleader to relief.") (citing *Iqbal*, 129 S.Ct. at 1949).

To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court must accept as true all factual allegations contained in the complaint. That principle, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1950.

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

## III. ANALYSIS

Defendants contend that Plaintiff has not alleged sufficient predicate acts to support the RICO claims, and that the Complaint "fails to allege continuing threats of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

racketeering activity warranting treble damages." Mot. at 3-4. Defendants claim that because Plaintiff has failed to allege actionable RICO claims under 18 U.S.C. § 1962(c), Plaintiff has also failed to state a claim under 18 U.SC. § 1962(d) for conspiracy, as Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Mot. at 23.

To state a cause of action under RICO, 18 U.S.C. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005).

Here, Defendants contest the adequacy of Plaintiff's allegations as to the second, third, and fourth requirements of 18 U.S.C. § 1962(c). First, Defendants contend the predicate acts alleged by Plaintiff are insufficient to support a RICO cause of action against them. Second, Defendants contend that Plaintiff has failed to allege a "pattern" of racketeering activity sufficient to support its RICO claims. Finally, Defendants argue Plaintiff has not met the requirements for pleading an "enterprise."

### A. Predicate Acts

"'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice, each of which is alleged in this case." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

Here, Plaintiff alleges the following predicate acts: (1) extortion under the Hobbs Act, 18 U.S.C. § 1951 (Compl. ¶¶ 169-72); (2) mail and wire fraud (Compl. ¶¶ 159-167); and (3) interstate transportation of stolen property under 18 U.S.C. § 2314 (Compl. ¶ 168).

#### 1. Extortion (against Gomer)

Both parties agree that extortion is defined by the Hobbs Act, in 18 U.S.C. § 1951(b)(2). "The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

under color of official right." 18 U.S.C. § 1951(b)(2). The Hobbs Act punishes both extortion and attempted extortion: "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion *or attempts or conspires to do so* . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a) (emphasis added).

The complaint consists of the following allegations of extortion against Gomer:

> Gomer obtained money and property from Foster, with his consent, induced by wrongful use of actual and threatened fear. In particular, Gomer repeatedly made the wrongful threat to Foster that unless he transferred money or property to her, to other members of the Chang Family, or to Siedman, Gomer would no longer care for Foster and he would live out the remainder of his life in a nursing home. Gomer's threats were coupled with the fraudulent representation that Foster's daughters did not love him and would not care for him in the event of her departure.
>
> On or about January 2, 2009, Gomer further wrongfully threatened to burn down Foster's Nantucket home unless he complied with her demands.

Compl. ¶¶ 170-71.

Defendants contend "[t]he Complaint contains no allegations that Foster was ever subjected to threats rising to the level of extortion." Mot. at 12. This is because, Defendants claim, extortion requires more than fear. *Id.* Defendants rely on *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990) to support this claim. In *Rothman*, the Ninth Circuit affirmed the district court's dismissal of plaintiff's complaint on the grounds that plaintiff's RICO claim was "based on defectively alleged predicate acts of mail fraud and extortion which do not support a RICO claim." *Id.* at 316. Specifically, the district court found that the alleged acts did not constitute extortion because they were not "a wrongful use of force or fear." *Id.* at 318. The Ninth Circuit found there was no extortion where the defendants threatened to raise rent because, as landlords, they had a right to raise rent. *Id.* The court noted:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

> Here, Rothman [plaintiff] does not allege that Vedder [defendant] may not raise the rent of those who have not signed the lease or that it may not refuse to pay their utility bills. Warnings and notice of such action, therefore, do not amount to "wrongful use of force or fear" within the meaning of either federal or California law. As a result, the district court correctly concluded that the amended complaint failed to allege sufficient predicate acts of extortion to support a RICO claim.

*Id*. Defendants also cite *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006), which similarly held that "[t]he use of the fear must be 'wrongful.'"

     Here, Defendants' alleged conduct does not consist of legal or permissible actions, as it did in *Rothman* or *Sosa*. Rather, Plaintiff alleges Defendants threatened to place Foster in a nursing home or burn down his home. When combined with Foster's "diminished mental capacity and long-standing fear of abandonment in his old age," as alleged in the Complaint (¶ 172), these acts do constitute a wrongful use of force or fear. *See United States v. Middlemiss*, 217 F.3d 112, 118 (2d Cir. 2000)(when extortion is accomplished by force or fear, the victim's state of mind is an essential element of a violation of 18 U.S.C. § 1951.). *See also United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir. 1980) ("Threatened force may encompass fear of economic loss as well as physical violence."). Plaintiff's allegations are far more than conclusory. They state the basis for extortion under 18 U.S.C. § 1951 sufficient to constitute a predicate act. *Compare with Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 621 F.3d 10, 15 (1st Cir. 2010) ("[T]he complaint says only that the defendants 'entered into a conspiracy to extort the plaintiff,' a conclusory assertion inadequate under *Twombly*.").

     Defendants also contend that [a]s pled, no property was 'obtained' as a result of alleged threats which is a required "element of an extortion claim." Mot. at 12. However, § 1951 does not require proof "that the extortioner himself directly received the fruits of his extortion or any benefit therefrom." *United States v. Panaro*, 266 F.3d 939, 948 (9th Cir. 2001). *See also Zemek*, 634 F.2d at 1174 ("Appellants' objective was to induce Chase to give up a lucrative business. The fact that their threats were unsuccessful does not preclude conviction.").

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

Plaintiff has therefore pled facts sufficient to support extortion under 18 U.S.C. § 1951 by Gomer as predicate act to RICO.

  2. Fraud (against all Defendants)

"Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (internal quotation marks omitted). "[T]o avoid dismissal for inadequacy under Rule 9(b), the complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (internal citations and alterations omitted).

Defendants assert "the Complaint fails to provide any detail as to the alleged fraudulent statements made, including any statements regarding why the alleged statements were false, as required by Rule 9(b)." Mot. at 14. Specifically, Defendants contend: (1) communications between White and Gomer were representations of law and not actionable as wire or mail fraud; and (2) the "vast majority" of the telephone calls and emails are "inconsequential" as they contain "mundane conversations." Mot. at 14.

Plaintiff has specified in great detail (including dates, participants, and specific content), and in chart form, 32 specific communications that allegedly constituted mail and wire fraud. Compl. ¶ 164 (pp. 53-66). Whether or not these conversations are "inconsequential" and thereby fail to constitute fraud requires the Court to engage in factual findings, which this Court is not permitted to do on a 12(b)(6) Motion to Dismiss. That some of the communications were between Gomer and White about legal and trust issues does not take them out of the range of potentially actionable communications; they could be in furtherance of the alleged fraud. Moreover, "a scheme to defraud may be based on a nondisclosure when there exists an independent duty that has been breached by the person so charged. This independent duty may exist in the form of a fiduciary duty

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

to third parties." *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003). *See also Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL 4123994, *7 (N.D. Cal. Oct. 6, 2010) (Wilken, J.) ("The wire and mail fraud statutes apply to non-disclosures, as well as to affirmative misrepresentations. A non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged.") (citing *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986)).

As Foster's attorney, White owed Foster fiduciary duties, and Gomer owed Foster fiduciary duties as his trustee. Opp. at 14. Therefore, their alleged breaches of those duties by omissions of material and truthful information constitute plausible allegations of fraud which sufficiently fit in with the conspiracy allegations against Sam Chang and Kim in the fifth cause of action.

Plaintiff has, therefore, in accordance with Fed. R. Civ. P. 9(b) pled facts sufficient to support mail and wire fraud against all Defendants as a predicate act to RICO.

### 3. Interstate Transportation of Stolen Property (against all Defendants)

The parties do not dispute that the elements of 18 U.S.C. § 2314 as relevant to this complaint are as follows: "Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . [s]hall be fined under this title or imprisoned not more than ten years, or both."

Plaintiff alleges that "Gomer, with White's advice and consent, fraudulently induced and coerced Foster to agree to sell 30,000 shares of his Colgate-Palmolive stock to pay [Alexandra] Chang's estate tax." Compl. ¶ 96. Plaintiff alleges that $1,885,000 from the proceeds of this transaction were wired from California, where the stock was held and managed by Merrill Lynch in San Francisco, to White's trust account in Massachusetts. Compl. ¶ 124.

Defendants contend that the sale of the stock and transfer of funds were within Gomer's authority and could not constitute an indictable predicate act of interstate transportation of stolen property, because Gomer was acting under a Durable Power of

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

Attorney ("DPOA") at the time of the stock sale. Reply at 9. Defendants, however, are again asking the Court to determine the lawfulness of this predicate act, rather than determine, as the Court is required to do, whether facts are sufficiently pled to survive a 12(b)(6) Motion to Dismiss. The Court finds the facts as alleged above, in addition to the content of the Complaint as a whole, demonstrate, plausibly, that Defendants acted unlawfully under 18 U.S.C. § 2314.

Plaintiff has therefore sufficiently alleged two or more predicate acts as required by 18 U.S.C. § 1962(c).

**B.    Pattern of Racketeering Activity**

RICO liability exists under § 1962(c) only where a defendant engages in a "pattern of racketeering activity." This requires that a RICO plaintiff establish that the defendant's predicate criminal acts are both "related" and "continuous." *H.J. Inc v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

1.    Legal Standard

The Ninth Circuit in *Turner v. Cook* defined the relatedness requirement of RICO as follows:

> In order to constitute a "pattern," there must be at least two acts of racketeering activity within ten years of one another. However, while two predicate acts are required under the Act, they are not necessarily sufficient. A "pattern" of racketeering activity also requires proof that the racketeering predicates are related and "that they amount to or pose a threat of continued criminal activity." Evidence of multiple schemes is not required to show a threat of continued criminal activity, and, indeed, proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic.

*Turner*, 362 F.3d at 1229 (internal citations omitted).

2.    Plaintiff's Allegations

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

Plaintiff, in the Opposition, cites to the Complaint ¶¶ 179, 188, as the portion of the complaint where Plaintiff "expressly alleges that Defendants' acts of racketeering were related." Opp. at 20. The allegations in these paragraphs are as follows:

> All the acts of racketeering described in paragraphs 174 through 177 (*supra*) [these paragraphs appear in Count One, the section 1962(c) claim against Gomer] were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Foster of money and property, their common result was to defraud Foster of money and property; Gomer, personally or through her agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Foster was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

Compl. ¶ 179. Paragraph 199 repeats and re-alleges those allegations in the fifth claim for relief, a Section 1962(d) claim against Sam Chang and Kim.

Plaintiff also contends the Complaint alleges at least three separate schemes: (1) Alexandra Chang and White, from early 2005 through January 31, 2008, engaged in a scheme to revoke the Foster-Chang premarital agreement, amend Foster's will, terminate Foster's counsel (Selzer), install Alexandra Chang as successor trustee, transfer Foster's Colgate-Palmolive shares from Palm Springs to San Francisco, and revise the estate once Alexandra Chang predeceased Foster (Compl. ¶¶ 38-49); (2) Gomer and White, from January 31, 2008 through March 12, 2009, engaged in a scheme to prevent Foster from hiring new counsel, and among other things, install Gomer as Foster's sole beneficiary (Compl. ¶¶ 49-152); and (3) Gomer, Sam Chang, and Kim, from October 2008 through December 21, 2010 (and after), engaged in a scheme to use Alexandra Chang's probate estate to defraud Foster. (Compl. ¶¶ 124-25, 130-31, 135, 155, 157-58). Opp. at 22-23.

3. <u>Analysis</u>

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

The relatedness prong of the pattern analysis is satisfied by these allegations.

Defendants rely heavily on *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992), noting that a "single episode having the singular purpose of impoverishing just one plaintiff, rather than a series of separate related acts, is too isolated to constitute a pattern of racketeering activity within the meaning of the Act." Mot. at 17 (citing *Sever*, 978 F.2d at 1535-36) (internal quotation marks and modifications omitted).

In *Sever*, plaintiff alleged a "pattern" of racketeering based on the fact that he was fired by the defendant on June 30, 1987, in retaliation for his testimony before a House Subcommittee, and the fact that the defendant allegedly "blacklisted" him which resulted in his being terminated by another employer. *Id*. The court dismissed the RICO complaint on the ground that the plaintiff had failed to allege a "pattern" of racketeering activity. In that case, "[the defendant's] collective conduct is in a sense a single episode having the singular purpose of impoverishing [the plaintiff], rather than a series of separate, related acts." *Id*. at 1535.

Unlike in *Sever*, Plaintiff's allegations do not consist largely of a single episode having the single purpose of injuring Foster and accomplishing that objective through that single "episode" . As Plaintiff alleges in the Complaint: "[the numerous alleged acts'] common purpose was to defraud Foster of money and property, [and] their common result was to defraud Foster of money and property." Compl. ¶¶ 179. That Foster (while he was alive) was the only immediate victim of the alleged actions has no bearing on whether the "pattern" allegations are sufficient. Moreover, in any realistic sense, his estate also is the victim. Accordingly, the Court finds that the allegations in the Complaint sufficiently establish a pattern of racketeering activity. *See Ricotta v. State of Cal.*, 4 F. Supp. 2d 961, 978 (S.D. Cal. 1998)

### C. Enterprise Element

Paragraphs 175-178 attempt to allege a RICO enterprise. They are inartful and peculiar, but when viewed from a practical perspective, they collectively amount to an allegation of an "association-in-fact" enterprise. As such, the allegations are sufficient. See, Boyle v. United States, 129 S. Ct. 2237 (2009).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV11-01242-AHM (DTBx) | Date | February 15, 2012 |
|---|---|---|---|
| Title | ESTATE OF DAVID R. FOSTER v. AEHUI GOMER et al. | | |

## IV.   CONCLUSION

Accordingly, and for the foregoing reasons, the Court DENIES Defendants' Motion.

|  | : |  |
|---|---|---|
| Initials of Preparer | SMO | |