## Extortion

173.   Gomer obstructed, delayed, or affected commerce and/or the movement of articles or commodities in commerce, by extortion or attempted or conspired to do so in violation of 18 U.S.C. § 1951.

174.   Gomer obtained money and property from Foster, with his consent, induced by wrongful use of actual or threatened fear.  In particular, Gomer repeatedly made the wrongful threat to Foster that unless he transferred money or property to her, to other members of the Chang Family, or to Siedman, Gomer would no longer care for Foster and he would be live out the remainder of his life in a nursing home.  Gomer's threats were coupled with the fraudulent representation, that Foster's daughters did not love him and would not care for him in the event of her departure.

175.   On or about January 2, 2009, Gomer further wrongfully threatened to burn down Foster's Nantucket home unless he complied with her demands.

176.   Gomer's threats were particularly effective and wrongful given Foster's diminished mental capacity and long-standing fear of abandonment in old age.  Gomer was aware of Foster's diminished mental capacity and his fear and intended to exploit these conditions to her financial advantage.

## COUNT ONE

## RICO - 18 U.S.C. § 1962(c)

### (Against Gomer and White)

177.   Foster realleges and restates paragraphs 1 through 176.

178.   Gomer and White constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "Gomer / White Enterprise").

    a.   Gomer and White shared the common purpose of (among other things) defrauding David Foster and his estate of money or property;

    b.   Gomer and White were related in that they were parties to a putative client-attorney relationship and in that they both owed fiduciary duties to David Foster.

    c.   The Gomer / White Enterprise possessed sufficient longevity for the members to carry out their purpose(s) in that the Gomer / White Enterprise existed from January 2008 through December 2010 (at a minimum).

Gomer and White are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Gomer / White Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the

acts of mail and wire fraud (described in paragraphs 32-171, *supra*), interstate transportation of stolen property (as described in paragraphs 172, *supra*), and extortion (as described in paragraph 173-176, *supra*).

179.   In the alternative to paragraph 178, Gomer, White, Siedman, Yong Sam Chang, Kim, and other members and agents of the Chang Family constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "Chang Family Enterprise").

    a.  The members of the Chang Family Enterprise shared the common purpose of (among other things) defrauding David Foster and his estate of money or property;

    b.  The members of the Chang Family Enterprise were related in that they were all members of the Chang Family or agents of the Chang Family.

    c.  The Chang Family Enterprise possessed sufficient longevity for the members to carry out their purpose(s) in that the Chang Family Enterprise existed from January 2008 through December 2010 (at a minimum).

Gomer and White are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Chang Family Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) &

1962(c).  Said pattern of racketeering activity consisted of, but was not limited to, the acts of mail and wire fraud (described in paragraphs 32-171, *supra*), interstate transportation of stolen property (as described in paragraphs 172, *supra*), and extortion (as described in paragraph 173-176, *supra*).

180.  In the alternative to paragraphs 178 and 179, between January 2008 and March 2009 (at a minimum), Foster was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).  Gomer and White are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of Foster through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  Said pattern of racketeering activity consisted of, but was not limited to, the acts of mail and wire fraud (described in paragraphs 32-171, *supra*), interstate transportation of stolen property (as described in paragraphs 172, *supra*), and extortion (as described in paragraph 173-176, *supra*).

181.  In the alternative to paragraphs 178 through 179, between January 2008 and December 2010 (at a minimum), the Estate of Change as a legal entity constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). Gomer and White are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Estate of Chang through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).  Said pattern of racketeering

activity consisted of, but was not limited to, the acts of mail and wire fraud (described in paragraphs 32-171, *supra*), interstate transportation of stolen property (as described in paragraphs 172, *supra*), and extortion (as described in paragraph 173-176, *supra*).

182.   At all relevant times, the enterprises alleged in paragraphs 178 through 181 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

183.   All of the acts of racketeering described in paragraphs 178 through 181 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Foster of money and property, their common result was to defraud Foster of money and property; Gomer and/or White, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Foster was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

184.   All of the acts of racketeering described in paragraphs 178 through 181 (*supra*) were continuous so as to form a pattern of racketeering activity in that Gomer and White engaged in the predicate acts over a substantial period of time or in that Gomer's and White's acts of racketeering were an extension of Chang's efforts to wrongfully divert Foster's property, and Gomer's and White's acts of racketeering

threatened to continue indefinitely and would have continued indefinitely but for the intervention of the Foster daughters and the appointment of the GAL.

185.   As a direct and proximate result of, and by reason of, the activities of Gomer and White, and their conduct in violation of 18 U.S.C. § 1962(c), Foster was injured in his business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Foster suffered damages to the extent his money or property was transferred to or under the custody or control of Gomer and/or White; to the extent Foster's money was used to pay estate taxes on behalf of Chang, when Chang's Estate (or its beneficiaries) should have bore the burden of those taxes; to the extent Foster incurred legal fees to set aside or reverse transfers of money or property that were fraudulently made by Gomer and/or White; and to the extent that Foster paid for services that provided no benefit to Foster and only inflicted harm upon him (e.g., the services of White and Siedman).  Foster is, therefore, entitled to recover threefold the damages he sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT TWO

### RICO Conspiracy - 18 U.S.C. § 1962(d)

### (Against White, Yong Sam Chang and Kim)

186.   Foster realleges and restates paragraphs 1 through 185.

187.   White, Yong Sam Chang, and Kim conspired with Gomer to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see*

*supra* ¶¶ 178-181) through a pattern of racketeering activity (*see supra* ¶¶ 32-176) in violation of 18 U.S.C. § 1962(d).  In particular, White, Yong Sam Chang, and Kim intended to further an endeavor of Gomer which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor.

188.   In the alternative to paragraph 187, Gomer, Yong Sam Chang, and Kim conspired with White to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*see supra* ¶¶ 178-181) through a pattern of racketeering activity (*see supra* ¶¶ 32-176) in violation of 18 U.S.C. § 1962(d).   In particular, Gomer, Yong Sam Chang, and Kim intended to further an endeavor of White which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor.

189.   Foster was injured by White's, Gomer's, Yong Sam Chang's, and Kim's overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud (as described in paragraphs 32-176, *supra*).

190.   As a direct and proximate result of, and by reason of, the activities of White, Gomer, Yong Sam Chang, and Kim, and their conduct in violation of 18 U.S.C. § 1962(d), Foster was injured in his business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Foster suffered damages to the extent his

money or property was transferred to or under the custody or control of Gomer; to the extent Foster's money was used to pay estate taxes on behalf of Chang, when Chang's estate (its beneficiaries) should have bore the burden of those taxes; to the extent Foster incurred legal fees to set aside or reverse transfers of money or property that were fraudulently made; and to the extent that Foster paid for services that provided no benefit to Foster and only inflicted harm upon him (i.e., the services of White and Siedman).  Foster is, therefore, entitled to recover threefold the damages he sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

### COUNT THREE

#### Elder Abuse

#### (Against All Defendants)

191.   Foster realleges and restates paragraphs 1 through 190.

192.   At all times relevant to this action, Foster resided in Riverside County, California.

193.   Foster was age 65 or older at all times relevant to this action.

194.   Foster suffered from the physical and mental limitations, which restricted Foster's ability to carry out normal activities or to protect Foster's rights. In particular, Foster suffered from the effects of chronic alcohol abuse and dementia.

195.   At all times relevant to this action, Gomer and White each individually had a confidential and fiduciary relationship with Foster in that:

    a.     Gomer assumed exclusive control over Foster's physical care and financial affairs immediately after Chang's death on January 31, 2008, until Gomer resigned on March 12, 2009.   During this period, Gomer affirmatively excluded others, including Sarah and Victoria Foster, from providing physical care to Foster and from controlling his financial affairs.

    b.     White was Foster's attorney from at least 2005 until 2009.

    c.     Foster was dependent upon Gomer and White for the management of his financial affairs.

196.   Gomer took, secreted, misappropriated, obtained and retained or assisted in the taking, secreting, misappropriating, obtaining and retaining of Foster's real and personal property, as described in paragraphs 63 through 176 of this complaint, with the intent to defraud and by undue influence in that (among other things):

    a.     Gomer removed / converted jewelry from Foster's home in California and transported it to New York.

    b.     Gomer secreted Foster's personal property in a locked closet immediately after Chang's death and transferred the keys to that closet (among other keys belonging to Foster) to New York in an effort to disable Foster (or his

daughters) from discovering, accessing, and controlling the property.

c.   Although already married to her husband in New Jersey, Gomer attempted to convince Foster to marry her and/or represented or allowed Foster to believe that she (Gomer) was his deceased wife, Chang.

d.   Gomer prevented Foster from retaining a "new team of counselors" after Chang's death to prevent any conflict with Chang's estate and White's handling of Chang's estate.

e.   Gomer and her daughter drafted several versions a letter that Gomer coerced Foster to copy in his handwriting and sign. The letter purported to be Foster's explanation of why he decided to name Gomer, his former sister-in-law, as his sole beneficiary to the exclusion of his daughters. The letter was to be held by White for the purpose of being produced as evidence if Sarah and Victoria Foster challenged Foster's estate after his death.

f.   Gomer caused Foster to gift $306,000 worth of jewelry to her.

g.   Given her authority as co-trustee of the Foster Family Trust – Survivor's Trust and/or under Foster's DPOA capacity (both obtained by her wrongful and undue influence over Foster), Gomer sold 30,000 shares of Colgate-Palmolive stock. The proceeds of this sale were $2.4 million.  Gomer used $1.6 million to pay Chang's estate taxes, which benefited Gomer and Chang's other heirs, at the expense of Foster and his heirs.

197.   White took, secreted, misappropriated, obtained and retained or assisted in the taking, secreting, misappropriating, obtaining and retaining of Foster's real and personal property, as described in paragraphs 63 through 176 of this complaint, with the intent to defraud and by undue influence in that (among other things):

a.   On February 4, 2008, White failed to disclose material information to Foster about his finances and property when Foster expressed his concern about Gomer's effort to secrete his personal property immediately after Chang's death.

b.   White prepared Foster's DPOA, which named Gomer as Foster's agent, and was executed on March 17, 2008 in California. White prepared the Seventh Amendment to the

Foster Family Trust, which named Gomer as co-trustee and was also executed on March 17, 2008.

c.    White advised Gomer that Foster should set up a revocable trust, holding title to the New York, California, and Nantucket properties, which would facilitate their distribution to Gomer upon Foster's death.

d.    On May 9, 2008, Foster executed several other documents prepared by White. The cumulative effect of White's work was to enable Gomer, Foster's former sister-in-law, to install herself as Foster's sole beneficiary.

e.    Without the fiduciary capacities created by White, Gomer could not have sold the 30,000 of Colgate-Palmolive stock used to pay Chang's estate taxes.

f.    White agreed to hold the letter that was drafted by Gomer but was falsely represented to be from Foster. Despite knowing the letter was actually drafted by Gomer, White was willing to present it as evidence of Foster's intent should Foster's daughter's challenge his estate after his death.

g.    On July 16, 2008, White advised Gomer that her plans to marry Foster would enable "the assets to pass to you tax

free" and that marriage would probably help her vis-à-vis the Foster daughters.  Upon information and belief, White knew that Gomer was already married.

h.   White thwarted ESCC's investigation of whether Foster was the victim of financial abuse by Gomer.

i.   Throughout October of 2008, White assisted and counseled Gomer in her effort to sell 30,000 shares of Colgate-Palmolive stock.  As a result, Foster wrongfully bore Chang's estate tax burden.

198.   Yong Sam Chang assisted in the taking, secreting, misappropriating, obtaining and retaining of Foster's personal property, as described in paragraphs 68, 106 and 107 of this complaint, with the intent to defraud and by undue influence in that (among other things): Yong Sam Chang absconded with Foster's keys for the purpose of concealing personal property that had been secreted by Gomer in Foster's California home; Yong Sam Chang assisted in Gomer's misappropriation of Foster's jewelry, and Yong Sam Chang misappropriated the proceeds of the sale of Colgate-Palmolive stock and wrongfully used those proceeds to pay Chang's estate taxes.

199.   Kim assisted in the taking, secreting, misappropriating, obtaining and retaining of Foster's and personal property, as described in paragraphs 68, 106 and 107 of this complaint, with the intent to defraud and by undue influence in that (among other things): Kim assisted in Gomer's misappropriation of Foster's jewelry;

and Kim assisted in Gomer's misappropriation of Foster's jewelry, and Yong Sam Chang misappropriated the proceeds of the sale of Colgate-Palmolive stock and wrongfully used those proceeds to pay Chang's estate taxes.

200.    Gomer, White, and others, knew or should have known that this conduct was likely to be harmful to Foster.

201.    Foster is informed and believes, and thereupon alleges, that each of the Defendants were the agents, representatives, servants, employees, principals, joint-venturers, co-conspirators, and/or representatives of each of the remaining codefendants and, in doing the acts hereinafter alleged, were acting within the course and scope of said agency, employment, joint-venture, conspiracy, and/or service with the approval, knowledge, authority, acquiescence and/or ratification of each of the remaining Defendants and, therefore, the Defendants who did not directly engage in the actions upon which this count is based are as liable for the resulting damages as the Defendants who did engage in said actions.

202.    Gomer's, White's, Yong Sam Chang's, and Kim's conduct constituted financial elder abuse under the California Welfare and Institutions Code § 15657.5, as defined in the California Welfare and Institutions Code § 15610.30.

203.    Gomer, White, Yong Sam Chang, and Kim acted with recklessness, malice, oppression, or fraud in the commission of the abuse against Foster.

204.   Under the California Welfare and Institutions Code § 15657.5(a), Gomer, White, Yong Sam Chang, and Kim are liable to Foster for reasonable attorney fees and costs.

205.   In doing the acts alleged above, which are incorporated herein by this reference as if repeated in full, Gomer, White, Yong Sam Chang and Kim have acted intentionally, outrageously, oppressively, despicably, fraudulently, and maliciously in conscious disregard of Foster's rights and welfare, and in contravention of California law and public policy.  As a result thereof, Foster is entitled to exemplary and punitive damages in an amount sufficient to properly punish and deter Gomer, White, Yong Sam Chang, and Kim in an amount to be proven at trial.

## COUNT FOUR

### Breach of Fiduciary Duty

### (Against Gomer and White)

206.   Foster realleges and restates paragraphs 1 through 205.

207.   Gomer owed fiduciary duties to Foster and a fiduciary relationship existed between Gomer and Foster.  In particular, Gomer was in a position of great disparity or inequality relative to Foster.  Gomer knew that Foster was relying upon her to act in his interests and to carry out his intentions.

208.   White owed fiduciary duties to Foster and a fiduciary relationship existed between White and Foster. In particular, White was in a position of great disparity or

inequality relative to Foster. White knew that Foster was relying upon her to act in his interests and to carry out his intentions.

209.   Gomer and White breached the fiduciary duties that they each owed to Foster.  In particular, the disparity in the relationships between Foster and Gomer and Foster and White was abused by Gomer and White to the benefit of Gomer and White.

210.   Gomer's and White's breach of fiduciary duties owed to Foster proximately caused damage to Foster.

211.   To the extent that Gomer and White benefitted from transactions with Foster, Gomer and White bear the burden to prove that these transactions were in accord with the duties they owed Foster and were not the result of fraud or undue influence.

212.   Foster is entitled to monetary damages in excess of $75,000 from Gomer and/or White to fairly and adequately compensate him for the injuries and damages he sustained by reason of Gomer's and/or White's breach of fiduciary duties.

## COUNT FIVE

### Constructive Fraud

### (Against Gomer and White)

213.   Foster realleges and restates paragraphs 1 through 212.

214.   Gomer owed fiduciary duties to Foster and a fiduciary relationship existed between Gomer and Foster.

215.   White owed fiduciary duties to Foster and a fiduciary relationship existed between White and Foster.

216.   Gomer and White failed to disclose to Foster material information that Gomer and White owed a duty to disclose to Foster.

217.   Foster relied on Gomer's and White's failures to disclose material information.  In addition, or in the alternative, Foster's ability to act on his own behalf and/or protect his interests and/or effectuate his desired estate planning and other financial objections were thwarted by Gomer's and White's failures to disclose material information.

218.   Foster was directly injured by reason of Gomer's and White's failures to disclose material information.

219.   Foster is entitled to monetary damages in excess of $75,000 from Gomer and White to fairly and adequately compensate him for the injuries and damages he sustained and will sustain by reason of Gomer's and White's failures to disclose material information.

## COUNT SIX

### Fraud

### (Against All Defendants)

220.   Foster realleges and restates paragraphs 1 through 219.

221.   Gomer and White made false representations to Foster, as set forth with specificity in paragraphs 32 through 171, *supra*.

222.   Gomer and White knew the statements were false at the time the statements were made to Foster.

223.   Gomer and White intended to defraud Foster and intended that Foster would rely upon their false representations.

224.   Foster justifiably and detrimentally relied upon Gomer's and White's false statements.

225.   Foster was directly injured by reason of Gomer's and White's false statements.

226.   Foster is informed and believes, and thereupon alleges, that each of the Defendants were the agents, representatives, servants, employees, principals, joint-venturers, co-conspirators, and/or representatives of each of the remaining codefendants and, in doing the acts hereinafter alleged, were acting within the course and scope of said agency, employment, joint-venture, conspiracy, and/or service with the approval, knowledge, authority, acquiescence and/or ratification of each of the remaining Defendants and, therefore, the Defendants who did not directly engage in the actions upon which this count is based are as liable for the resulting damages as the Defendants who did engage in said actions.

227.   Foster is entitled to monetary damages in excess of $75,000 from Defendants to fairly and adequately compensate him for the injuries and damages he sustained by reason of Gomer's and White's fraud.

228.   In doing the acts alleged above, which are incorporated herein by this reference as if repeated in full, Gomer, White, Yong Sam Chang and Kim have acted intentionally, outrageously, oppressively, despicably, fraudulently, and maliciously in conscious disregard of Foster's rights and welfare, and in contravention of California law and public policy.  As a result thereof, Foster is entitled to exemplary and punitive damages in an amount sufficient to properly punish and deter Gomer, White, Yong Sam Chang, and Kim in an amount to be proven at trial.

## COUNT SEVEN

### Conversion

### (Against Gomer and Yong Sam Chang)

229.   Foster realleges and restates paragraphs 1 through 228.

230.   After Chang's death, Foster owned or had the right to possession of certain jewelry and other personal property that had been in Chang's possession during her life.  Foster also owned or had the right to possess his real property, money, and other assets.

231.   Gomer and Yong Sam Chang wrongfully interfered with Foster's possession of property.

232.   Foster was directly injured by reason of Gomer's and Yong Sam Chang's wrongful interference with Foster's possession of property.

233.   Foster is entitled to monetary damages in excess of $75,000 from Gomer and Yong Sam Chang to fairly and adequately compensate him for the

injuries and damages he sustained by reason of Gomer's and Yong Sam Chang's conversion of property.

234.   In doing the acts alleged above, which are incorporated herein by this reference as if repeated in full, Gomer and Yong Sam Chang acted intentionally, outrageously, oppressively, despicably, fraudulently, and maliciously in conscious disregard of Foster's rights and welfare, and in contravention of California law and public policy.   As a result thereof, Foster is entitled to exemplary and punitive damages in an amount sufficient to properly punish and deter Gomer and Yong Sam Chang in an amount to be proven at trial.

**COUNT EIGHT**

**Unjust Enrichment**

**(Against All Defendants)**

235.   Foster realleges and restates paragraphs 1 through 234.

236.   Gomer, White, Yong Sam Chang, and Kim, each individually, received a benefit or and enrichment from Foster.

237.   It would be unjust for Gomer, White, Yong Sam Chang, and Kim to retain the benefit that they received from Foster.

238.   The benefit retained by Gomer, White, Yong Sam Chang, and Kim has been at the expense or impoverishment of Foster.

239.   There is a relationship between the enrichment of Gomer, White, Yong Sam Chang, and Kim and the impoverishment of Foster.

240.   Gomer's, White's, Yong Sam Chang's, and Kim's unjust enrichment is not justified.

241.   Foster was directly injured by reason of the unjust enrichment of Gomer, White, Yong Sam Chang, and Kim, and Foster does not have an adequate remedy at law.

242.   Foster is entitled to monetary damages in excess of $75,000 from Gomer, White, Yong Sam Chang, and Kim to fairly and adequately compensate him for the injuries and damages he sustained by reason of Gomer's, White's, Yong Sam Chang's, or/and Kim's unjust enrichment.

**JURY TRIAL DEMAND**

Foster demands a jury trial as to all issues triable by jury in this case.

WHEREFORE, the Foster demands that:

1.     Judgment be entered in favor of Foster and against Gomer, White, Yong Sam Chang, and Kim, jointly and severally, in the amount of Foster's actual damages to be proven at trial;

2.     Foster be awarded prejudgment interest on the amount of damages and/or losses that Foster has sustained;

3.     Foster be awarded treble damages pursuant to 18 U.S.C. § 1964(c);

1        4.    Foster be awarded punitive damages pursuant to California Civil Code §

2    3294;

3

4        5.    Foster be awarded reasonable costs and attorneys' fees pursuant to 18

5    U.S.C. § 1964(c) and/or the California Welfare and Institutions Code § 15657.5(a);

6    and

7

8        6.    Foster be awarded such other and further relief as the Court deems just

9    and equitable.

10

11

12   Date: March 12, 2012                **Law Office of Gary Kurtz**

13                                  A Professional Law Corporation

14                                  By:

15                                  Gary Kurtz, Esq., Attorney
                               for Plaintiff Estate of David Foster

16   Additional and included counsel for Plaintiff

17   To be included in all service or notice provided to Plaintiff:

18   Jeff Grell

19   Grell & Feist LLC

20   825 Nicollet Mall, Suite 1648
Minneapolis, MN 55402

21   (952) 835-4101

22

23   M. David Blake
Clare Culhane

24   Old City Hall
45 School Street

25   Boston, MA 02108

26   (617) 723-3224

27

28

## Proof of Service

I am a resident of the county of Los Angeles, State of California. I am over 18 years old and not a party to the within action; my business address is 20335 Ventura Boulevard, Suite 200, Woodland Hills, California 91364. I am attorney admitted to practice before this instant court.

On March 12, 2012, I served the following document described as: FIRST AMENDED COMPLAINT on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Christiane Cargill Kinney, LECLAIRRYAN
888 S. Figueroa Street, Suite 1800  Los Angeles, California 90017

David Gurnick, Lewitt, Hackman, Shapiro, Marshall & Harlan
16633 Ventura Boulevard, 11th Floor, Encino, CA  91436

Gregory M. Bordo | Blank Rome LLP
1925 Century Park East Suite 1900 | Los Angeles, CA 90067

By U.S. mail as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under this practice it would be deposited with the U.S. postal service on the same day with this postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or meter date is more than one day of deposit for mailing in affidavit.

Executed on March 12, 2012, at Los Angeles, California. I declare under penalty of perjury under the laws of State of California that I am a member of the bar of the above identified court and that the forgoing is true and correct.

Gary Kurtz